Filed 6/28/16  P. v. Harber CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E064363 |
| v. | (Super.Ct.No. FVI500826) |
| MARIE ONASSUS HARBER, | OPINION |
| Defendant and Appellant. | |

APPEAL from the Superior Court of San Bernardino County.  Raymond L. Haight III, Judge.  Affirmed.

MaryBeth LippSmith, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland and Allison V. Hawley, Deputy Attorneys General, for Plaintiff and Respondent.

The trial court sentenced defendant and appellant Marie Onassus Harber to a county prison term of sixteen months after she pled guilty to second degree burglary

(Pen. Code, § 459).[1]  Defendant appeals from the restitution order in the amount of $3,008.96, which the court imposed after a hearing pursuant to section 1202.4, subdivision (f).  For the reasons discussed below, we affirm.

## FACTS AND PROCEDURE

On April 1, 2015, San Bernardino County Sheriff's Deputies found defendant and another suspect inside the home of the victim after a neighbor called in a suspected burglary in progress.  The home had belonged to the victim's family for 50 years, but had been unoccupied since 2009 when the victim's mother died.  The victim had last lived in the home when she was taking care of her parents. The home still contained the victim's parent's possessions and some of the victim's possessions.  The victim came to the home every few days to pack up and check on the home.  The home had been previously burglarized and ransacked in October 2013, but the victim stated she had picked up and restored the home to order after that.

When the deputies entered the home on April 1, 2015, the home was in disarray, with items strewn about the floor.  The deputies determined the intruders had gained entry to the home by breaking a window.  Boxes and bins were found near the front door, loaded with items from the home.  Defendant was found in possession of 30 checks belonging to the victim, with the address of the burglarized home and the victim's maiden name printed on them.  The victim identified the checks as hers and said they dated from the 1990s.

---

[1]  Section references are to the Penal Code unless otherwise indicated.

On April 14, 2015, defendant pled guilty to second degree burglary. On that date the court sentenced defendant according to the plea agreement to the low term of 16 months in county prison.

The court held a restitution hearing on August 28, 2015, after which it ordered defendant to pay restitution of $3,008.96. The liability was joint and several with defendant's codefendant. The People called the victim to testify as to how she created the list of the items taken, along with the value estimates. The defense cross-examined the victim regarding her familiarity with the home and the personal property inside. The defense called the responding deputy in an attempt to challenge defendant's joint and several liability with her codefendant. Finally, the defense called the victim in an attempt to rebut the $1,000 value she had placed on a toolbox her father had made, along with the tools inside. The relevant testimony is as follows:

"Q. Okay. What types of tools were inside that toolbox?

"A. All kinds. My father had – he was someone who would have lots of tools.

"Q. Okay. Are you generally familiar with tools?

"A. Basically, yes.

"Q. Okay.

"A. There are a lot of things on that list.

"Q. Can you describe what type of tools were inside the toolbox?

"A. All kinds. There was screwdrivers. It was a box like this (indicating).

"Q. Okay.

3

"[Prosecutor]: May the record reflect the witness placed her arms apart approximately two and a half feet.

"[THE COURT]: What it looks like to me.

"[THE WITNESS]: If you were going to lift up the box, you had to be a rather strong person.

"Q.    You knew there was screwdrivers in there. What else?

"A.    All kinds of tools in a toolbox, screwdrivers. I don't know the names of things particularly, drill bits. A lot of them. He was the kind of person that worked on things.

"Q.    Okay. Before we continue with that, prior to April 1st, 2015 – well, sure, prior to April 1st, 2015, when was the last time you actually opened up that tool box?

"A.    Nobody enters that residence but me, and my husband once in a while. I'm the only one that has a key.

"[Defense counsel]: Objection.

"[THE COURT]: I'm going to exercise my authority. It's 352. This is a nonproductive line of cross-examination. Ask your next question. I don't need to hear what her recollection is of every tool in the toolbox if she is not going to be able to do it.

"Q.    You estimate the loss of the toolbox to be $1,000?

"A.    Yes.

"Q.    Could you separate the loss – the value between the tools and the toolbox itself? How much would you say the tools were worth?

"A.    They were worth more than the box itself.

"Q.    How much would you estimate the tools were worth?

"A.    Basically the full amount because the box was something he had made.

"Q.    Full amount of what?

"A.    You have it down there.

"[THE COURT]:  What you are saying the $1,000 in tools?

"[THE WITNESS]:  Yes.  Because tools are expensive.  He made the box himself.

"[THE COURT]:  You didn't give a value to the box?

"[THE WITNESS]:  I just made it one value because the tools were in the box.

"Q.    And that $1,000 includes the box as well as the tools?

"[THE PEOPLE]:  Objection.  Asked and answered.

"[THE COURT]:  It is.  Sustained.

"Q.    Okay.  So screwdriver, drill bits, what else?

"[THE PEOPLE]:  Objection, your Honor.  The Court already ruled.

"[THE COURT]:  352

"[Defense Counsel]:  [The victim] is claiming the tools are $1,000.

"[THE COURT]:  It's not going to help me determine if that's a credible estimate if you go over every tool in the box.  352 objection is sustained."

The court then made the restitution order in the full amount requested, reasoning as follows regarding the value of the tools and tool box:

"[THE COURT]: . . . She did describe there were drills also in the box, which tend to be expensive items. It was a pretty large box as she described it. [¶] Just based on my knowledge of how much tools cost, $1,000 for tools in a large box is not an unreasonable amount. There is evidence she indicated she didn't include everything, which to me tells me when she prepared this list, it was being discriminating and relying only upon her recollection of things that she was fairly sure that were there and she had a handle on the actual value of the items that were missing. So that adds to the credibility of her estimate also. [¶] . . . [¶] Based upon the testimony of the total being requested of $3,008.96, it's a reasonable amount.

This appeal followed.

## DISCUSSION

Defendant argues the trial court abused its discretion when it determined the value of the tools and tool box. Specifically, she contends the victim's testimony did not create a prima facie showing of the tools' value, the court improperly relied on its own opinion of the tools' value, and the court's determination that the victim was a credible witness is unsupported by substantial evidence. Further, defendant argues the court improperly prevented defense counsel from cross-examining the victim so as to rebut the victim's testimony.

Section 1202.4, subdivision (f), provides that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court

6

order, based on the amount of loss claimed by the victim or victims or any other showing to the court."

"The standard of review of a restitution order is abuse of discretion. 'A victim's restitution right is to be broadly and liberally construed.' [Citation.] '"When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court."' [Citations.]" (*In re Johnny M.* (2002) 100 Cal.App.4th 1128, 1132.) "In reviewing the sufficiency of the evidence, the '"power of the appellate court begins and ends with a determination as to whether there is any substantial evidence, contradicted or uncontradicted," to support the trial court's findings.' [Citations.] Further, the standard of proof at a restitution hearing is by a preponderance of the evidence, not proof beyond a reasonable doubt. [Citation.] 'If the circumstances reasonably justify the [trial court's] findings,' the judgment may not be overturned when the circumstances might also reasonably support a contrary finding. [Citation.] We do not reweigh or reinterpret the evidence; rather, we determine whether there is sufficient evidence to support the inference drawn by the trier of fact." (*People v. Baker* (2005) 126 Cal.App.4th 463, 468-469.) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543 [Fourth Dist., Div. Two] (*Gemelli*).)

7

Here, the victim's testimony that she estimated the tools and tool box to be worth about $1,000 established a prima facie presumption that the tools and tool box were worth that amount. It was then defendant's burden to rebut that presumption. As the People point out, under *Gemelli,* the trial court is entitled to accept the property owner's statement of loss as prima facie evidence of the loss's value. (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1543) The trial court here properly did so. The defense did not provide any evidence at all that the tools were worth less. Defense counsel attempted to undermine the victim's testimony that the tools and tool box were worth $1,000 by asking the victim to itemize the tools. The victim was unable to itemize the tools, stating on three separate occasions that the box was full of "all kinds" of tools. The victim did mention in particular screwdrivers and drill bits, but emphasized that her father "was someone who would have lots of tools" and "All kinds of tools . . . . I don't know the names of things particularly . . . . A lot of them. He was the kind of person that worked on things." The victim also confirmed four separate times in response to questioning that the tools were worth about $1,000. She did not waiver in her estimate. Despite the victim's inability to name and itemize each of the tools that were in the two-and-a-half-foot-long box, she supported the $1,000 estimate with the observations that her father had a "lot" of tools in the box because he worked on things, was the kind of person that would have a lot of tools, and that one would have to be a strong person to lift the large box containing all of the tools. For these reasons, the victim's testimony created a prima facie showing that the tools and toolbox were worth $1,000.

8

The court did not improperly rely on its own opinion of the tools' value. Foremost, the court did not need to rely on its own opinion because, as discussed above, the victim's testimony was enough to create a prima facie showing. Second, even though the court did misstate the victim's testimony that the toolbox contained drills, it properly relied on its own knowledge "of how much tools cost. $1,000 for tools in a large box is not an unreasonable amount." As the People point out, defendant has provided no authority that a trial court or jury cannot rely on common knowledge or its own experience to make factual determinations. In fact, case law allows attorneys in closing argument to the trier of fact to argue statements of fact that are matters of common knowledge, even where such statements are outside the evidence taken in the case. (*People v. Monterroso* (2004) 34 Cal.4th 743, 784) In this case, the statement that "tools are expensive" is very arguably a matter of common knowledge and therefore the court properly relied on that common knowledge.

The court's determination that the victim was a credible witness does not need to be supported by substantial evidence. Rather, "it is the exclusive province of the trial judge or jury to determine the credibility of a witness . . . . We [do not] resolve . . . credibility issues . . . . [Citation.]" (*People v. Harris* (2013) 57 Cal.4th 804, 849.) Defendant's citation to *Gemelli* for requiring a credibility determination to be supported by substantial evidence is incorrect. The statement in that case to which defendant refers is the following: "'[d]eferential review is particularly necessary when, as here, the factual determination depends in part on judging a witness's credibility,' and

9

we must uphold such a determination if it is supported by substantial evidence [citation]." (*Gemelli*, *supra*, 161 Cal.App.4th at p. 1545.) However, the determination that must be supported by substantial evidence is not whether the witness is credible, but rather the broader factual determination, which in turn can be supported by the witness testimony as substantial evidence. To repeat, the trial court's determination of the victim's credibility need not be supported by substantial evidence, and defendant has provided us with no reason to overturn that determination.

The trial court did not improperly deny defense counsel the opportunity to examine the victim on the valuation of the tools and tool box. "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (Evid. Code, § 352.) Here, the court explained that the questions defense counsel continued to ask about the witness' knowledge of exactly what and how many tools were in the toolbox were a "non-productive line of" questioning and that "I don't need to hear what her recollection is of every tool in the toolbox if she is not going to be able to do it." Defense counsel had already established by questioning the victim that she could not list or name the many tools in the toolbox, and, as the trial court explained, additional questions of that type would only elicit more answers of the same nature. Thus, defendant was not improperly denied the opportunity to ask additional, similar questions of the victim.

Defendant cannot establish prejudice from any of the above argued instances of error, even if we were to find error. Reversal is not required unless "it appears reasonably probable that a result more favorable to the defendant would have been reached absent the error." (*People v. Lee* (1999) 20 Cal.4th 47, 62, citing *People v. Watson* (1956) 46 Cal.2d 818, 836.) Defendant merely argues that the value of the tools and toolbox would have been calculated at far less than $1,000 "[h]ad the trial court determined the value of the toolbox based on specific, accurate and reliable testimony." However, defendant did not present any evidence to contradict the estimate of value given by the victim, and defense counsel's repetitive questioning of the victim that showed she could not name or list each of the many tools in the large toolbox does not undermine the trial court's finding that the victim was credible, nor its determination based on common knowledge that tools are expensive and that the $1,000 estimate was not unreasonable. Further, defendant in this appeal does not provide any information to support her claim that the value of the tools and toolbox would have been determined to be less than $1,000.

### DISPOSITION

The trial court's restitution order is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:
HOLLENHORST
J.
SLOUGH
J.

11